## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | |
|---|---|
| In re<br><br>RMA STRATEGIC OPPORTUNITY FUND, LLC,<br><br>Debtor<br><br>MARK G. DEGIACOMO, CHAPTER 7 TRUSTEE FOR THE ESTATE OF RMA STRATEGIC OPPORTUNITY FUND, LLC,<br><br>Plaintiff<br><br>v.<br><br>HOLMAN AUTOMOTIVE GROUP, INC. d/b/a PORSCHE OF SAN DIEGO,<br><br>Defendant | Chapter 7<br>Case No. 17-13328-FJB<br><br><br><br><br><br>Adversary Proceeding<br>No. 19-1113 |

### MEMORANDUM OF DECISION AND ORDER ON
### MOTION OF KUNI SDP, LLC TO DISMISS

**I.    Overview**

By his complaint in this adversary proceeding, Mark DeGiacomo (the "Trustee"), plaintiff and chapter 7 trustee in the bankruptcy case of debtor RMA Strategic Opportunity Fund, LLC (the "Debtor"), seeks to avoid an alleged prepetition fraudulent transfer of the Debtor's property to Kuni SDP, LLC d/b/a Porsche San Diego[1] (the "Defendant"). The Defendant has moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012(b), arguing that the Trustee lacks standing to

---

[1] The defendant named in the complaint is Homan Automotive Group, Inc., d/b/a Porsche of San Diego; the present motion is brought by Kuni SDP, LLC d/b/a Porsche San Diego. The movant notes in its motion that it was improperly named in the adversary complaint but does not dispute that it is the intended defendant and real party in interest. The Trustee appears to agree that the moving party has standing to bring this motion to dismiss. For purposes of this motion, the Court understands the movant to be the real party in interest and will adjudicate this motion accordingly. However, the Court expects that, after adjudication of this motion, either the movant will move to be substituted for the named defendant or, if it does not, the plaintiff will move to amend the complaint to properly name the movant as defendant.

bring forth claims on behalf of RMA Group, Inc. ("RMA Group") and as a result, the Trustee cannot prove that the purported transfers were of the *Debtor's* property.

II. **Procedural History**

On October 6, 2017, the Court entered an order for relief against the Debtor under chapter 11 of the Bankruptcy Code, following the filing of an involuntary petition by petitioning creditors. On October 25, 2017, the Trustee was appointed as Chapter 11 Trustee. On November 9, 2017, this case was converted to one under chapter 7. On October 2, 2019, the Trustee filed a complaint commencing this adversary proceeding. The complaint seeks avoidance of an alleged prepetition fraudulent transfer of $100,000 of the Debtor's investor funds to the Defendant. The complaint states three counts. Count I seeks avoidance, recovery, and preservation of the alleged fraudulent transfer pursuant to 11 U.S.C. §§ 544(b), 550, and 551 and MASS. GEN. LAWS ch. 109A, §§ 5(a)(2) & 8, based on constructive fraud. Count II seeks avoidance, recovery, and preservation of the alleged fraudulent transfer pursuant to 11 U.S.C. §§ 544(b), 550, and 551 and MASS. GEN. LAWS ch. 109A, §§ 5(a)(1) & 8, based on actual fraud. Count III seeks avoidance, recovery, and preservation of the alleged fraudulent transfer pursuant to 11 U.S.C. §§ 544(b), 550, and 551 and MASS. GEN. LAWS ch. 109A, §§ 6(a) & 8.

The Defendant moved to dismiss the complaint arguing that the Trustee lacks standing to assert the claims and that the Trustee cannot prove the transfers sought to be avoided are of the *Debtor's* property. The Defendant argued that the funds were transferred from a bank account in the name of RMA Group, a separate non-debtor entity. For similar reasons, the Defendant argued the funds it received were property of RMA Group, not the Debtor, and therefore, the Trustee cannot prove his *prima facie* case for a fraudulent transfer. The Trustee argued in opposition that investor funds of the Debtor were deposited in the RMA Group bank account and the Debtor exercised control over the account. The Court held a hearing and took the matter under advisement.

III.       **Facts Alleged in Complaint**

The Debtor was a pooled investment vehicle formed on May 16, 2007 as a Delaware limited liability company with the name RMA Group Galleon Fund, LLC but later changed its name to RMA Strategic Opportunity Fund, LLC. On March 27, 2009, the Debtor registered to do business in Massachusetts, at which time Raymond Montoya Sr. ("Montoya") was its manager. On November 16, 2009, Montoya filed a Certificate of Amendment with the Office of the Secretary of the Commonwealth, changing the Debtor's manager from himself to Resource Managed Assets, LLC ("RM Assets"). Following the change of managers, Montoya continued to manage the Debtor by virtue of his being the manager of the Debtor's sole manager, RM Assets.

After deciding to invest in the Debtor, prospective investors were directed to wire funds to an account at Citizens Bank in the name of RMA Group (an affiliated entity controlled by Montoya) ending in -3582 (the "-3582 Citizens Account"), or to send a check to the Debtor's office which was then deposited into the -3582 Citizens Account. At all relevant times, several Montoya family members were authorized signatories on the -3582 Citizens Account. As of the date of the complaint, the Trustee determined that between January 1, 2014 and mid-2017, investors transferred at least $30 million to the -3582 Citizens Account intended for investment in the Debtor. Over the same time period, a total of less than $15,830,000 was transferred from the -3582 Citizens Account to one of the five brokerage accounts held at E*TRADE Securities LLC ("E*Trade"). The respective E*Trade accounts stood in the names of: (1) RMA Strategic Opportunity Fund, LLC (the Debtor); (2) RM Advisors; (3) RM Assets; (4) RMA Group Consultants, Inc.; and (5) Montoya, individually. From January 1, 2014 to the present, over $16 million of Debtor investor funds were never transferred from the -3582 Citizens Account to any brokerage account. Instead, these funds were used to pay, among other things, purported capital distributions to the Debtor's investors, purported operational expenses, and personal expenses for Montoya and his family members.

The Trustee's investigation revealed that investor funds belonging to the Debtor were used to pay the Defendant for non-Debtor liabilities. Specifically, Debtor funds were used to partially finance the purchase of a luxury automobile from the Defendant. The Defendant operates a Porsche automobile dealership under the trade name Porsche of San Diego. On or about June 7, 2014, Montoya wrote a $100,000 check paid to the order of Porsche of San Diego (the "Transfer"). In the memo line of the check, Montoya wrote "Deposit for 911 Turbo S." Although the Debtor received no value from Montoya's personal spending and expenditures, investor funds owned by the Debtor were used to pay the Defendant for Montoya's automobile purchase. The Transfer received by the Defendant was made with misappropriated investor funds, for which the Debtor received no reasonably equivalent value.

On August 1, 2017, a criminal complaint was filed against Montoya in the United States District Court for the District of Massachusetts alleging that Montoya committed wire and mail fraud by using the Debtor to commit a scheme to defraud investors. The affidavit filed for the purpose of establishing probable cause to support the criminal complaint sets forth several admissions of Montoya's from his interview with law enforcement. Montoya admitted to defrauding investors of the Debtor and covering up substantial losses that the Debtor incurred beginning in 2015. Montoya further admitted that around 2014, he started to use investor funds for personal expenses, including travel, the purchase of numerous high-end vehicles, tuition for his children, and the mortgage on his son's residence in Illinois. On July 16, 2018, the United States Attorneys' Office filed a Felony Information charging Montoya with mail fraud, wire fraud, unlawful monetary transaction and fraud forfeiture. On October 17, 2018, Montoya signed a plea agreement in which he "expressly and unequivocally admits that he committed the crimes charged in Counts One through Ten of the Information, did so knowingly, intentionally and willfully, and is in fact guilty of those offenses."

At all relevant times, the Debtor was insolvent and was operated as a scheme to defraud creditors. The Debtor was operated as a Ponzi scheme, and Montoya and others at his direction

concealed the ongoing fraud in an effort to hinder, delay, or defraud other current and prospective investors of the Debtor. The money received from investors was not set aside to buy securities, but instead was transferred to Montoya or his family members to pay personal expenses or to make the distributions to, or payments on behalf of, other investors. The money sent to the Debtor for investment, in short, was simply used to keep the scheme going and to enrich Montoya, his family and others, including the Defendant, until such time as the requests for redemptions overwhelmed the flow of new investments and cause the inevitable collapse of the Ponzi scheme. At all relevant times, the Debtor's liabilities were tens of millions of dollars greater than the Debtor's assets. The Debtor was insolvent in that (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, the Debtor was left with insufficient capital.

IV.     Discussion

In considering a motion to dismiss under Rule 12(b)(6), "a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs," *Watterson v. Page*, 987 F.2d 1,3 (1st Cir. 1993), to determine whether the plaintiff has alleged "sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Furthermore, the court "is generally limited to considering 'facts and documents that are part of or incorporated into the complaint.'" *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (quoting *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.2d 315, 321 (1st Cir. 2008)). Therefore, this Court takes the allegations contained in the Trustee's complaint as true and draws all reasonable inferences in the Trustee's favor. *Robert v. Household Finance Corp. II (In re Robert)*, 432 B.R. 464, 469 (Bankr. D. Mass. 2010). While both parties in their memoranda discuss and cite facts outside the complaint, the Court will exclude them and consider only those facts alleged in the complaint. *See* Fed. R. Civ. P. 12(d).

**A. Applicable Law**

All counts of the Trustee's complaint seek avoidance of the Transfer to the Defendant pursuant to 11 U.S.C. § 544 and certain sections of MASS. GEN. LAWS ch. 109A, the Massachusetts enactment of the Uniform Fraudulent Transfer Act ("UFTA").[2] In relevant part, 11 U.S.C. § 544(b) states that a trustee in bankruptcy "may avoid any transfer of an interest of the debtor in property [. . .] that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title[.]" 11 U.S.C. § 544(b)(1).

The applicable law in Counts I & II is MASS. GEN. LAWS ch. 109A, § 5(a), which provides in relevant part:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
> >
> > (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> >
> > > (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > >
> > > (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Applicable law in the case of Count III is MASS. GEN. LAWS ch. 109A, § 6(a), which provides in relevant part:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if

---

[2] It is unclear whether Massachusetts law is the appropriate state law to apply to the disputed Transfer. Both the Trustee and the Defendant made arguments under the Massachusetts enactment of the UFTA and thus have treated Massachusetts as supplying the relevant state law; neither has expressly addressed the choice of law issue. Accordingly, for the purposes of adjudicating this motion, the Court will apply Massachusetts law but reserves judgment on the choice-of-law issue.

the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

### B. Analysis

The Defendant concedes that the Trustee has standing to assert causes of action belonging to the Debtor's estate, including those arising under sections of the Bankruptcy Code, such as sections 541(a), 542, 544, 548, and 704. However, the Defendant argues here that RMA Group, *not the Debtor*, made the Transfer the Trustee now seeks to avoid. The Defendant asserts that without being appointed chapter 7 trustee of any bankruptcy estate of RMA Group or seeking substantive consolidation of the assets and liabilities of RMA Group with those of the Debtor, the Trustee does not have standing to avoid a transfer made by RMA Group. For similar reasons, the Defendant argues that the Trustee cannot prove the Transfer was of property of the Debtor because the funds in the -3582 Citizens Account are presumed to belong to RMA Group.

"The name on a bank account is *prima facie* proof of the ownership of the account. The law presumes that a deposit, or the right to reclaim it, belongs to the person whose name it is entered, and the bank cannot question such person's right thereto. . . .However, such presumption is rebuttable, thus, having one's name listed on the account, is not tantamount to ownership of the funds therein." 9 C.J.S. BANKS AND BANKING § 289 (Mar. 2021). Courts applying the UFTA and similar Bankruptcy Code provisions determine whether transferred funds are subject to avoidance and recovery by a trustee or creditor by looking to who controls the funds, rather than the name on the bank account. *See e.g.*, *In re Montreal, Maine & Atlantic Railway, Ltd.*, 888 F.3d 1, 10 (1st Cir. 2018) (holding that a debtor acting as a disbursing agent with specific restrictions for disbursement of funds lacks a cognizable property interest and the disbursement is not avoidable because it does not have sufficient control over the subject funds); *In re IFS Financial Corp.*, 669 F.3d 255, 264 (5th Cir. 2012) (affirming district court's finding that the debtor exercised control over accounts of affiliated entities such that it had de facto ownership over them and

7

the funds therein under identical Texas law); *Riley v. Nat'l Lumber Co. (In re Reale)*, 584 F.3d 27, 31 (1st Cir. 2009) (affirming bankruptcy court's determination that the debtor exercised sufficient control over funds in his mother's bank account to demonstrate his interest in property).

The Trustee has alleged that prospective investors of the Debtor either wired their investments into the -3582 Citizens Account or sent checks to the Debtor's office, which were then deposited in the -3582 Citizens Account. The Trustee has further alleged that between January 1, 2014 and mid-2017, the Debtor's investors transferred at least $30 million to the -3582 Citizens Account intended for investment in the Debtor. Of that amount, the Trustee asserts that over $16 million of the Debtor investor funds were never transferred from the -3582 Citizens Account to any brokerage account, but instead were used to pay, among other things, personal expenses for Montoya and his family members. The Transfer is alleged to have occurred on or about June 7, 2014 by a check written by Montoya in the amount of $100,000. At all relevant times, Montoya is alleged to have been the manager of the Debtor or the manager of its sole manager RM Assets.

Drawing the reasonable inference that the Transfer consisted in full or in part of the Debtor's investor funds deposited in the -3582 Citizens Account in favor of the Trustee, the Court must find that the Trustee has at least plausibly pleaded that the Transfer was made *by the Debtor* and that the transferred funds constituted property of the Debtor, notwithstanding that they were held in the name of another entity. Given the plausibility that the Transfer involved Debtor funds, the Trustee unquestionably has stated a plausible claim for relief under 11 U.S.C. § 544(b)(1) and the cited sections of the UFTA as adopted in Massachusetts.[3]

---

[3] The Defendants also seek dismissal on the basis that the Trustee lacks standing to assert these claims because the underlying cause of action does not belong to the Debtor. This argument is misplaced in two ways. First, the Defendant misunderstands the nature of this action, which is based on the Trustee's powers in 11 U.S.C. § 544(b)(1). Under that subsection, the Trustee does not assert a prepetition cause of action of the debtor but is authorized to assert certain rights belonging to the Debtor's creditors. Second, the Trustee seeks this recovery for the benefit of the estate in this case. As Trustee of that estate, he has a clear stake in the matter and accordingly has standing to bring this complaint. Whether he can prove the elements of his action under § 544(b)(1), especially

V.     **Conclusion and Order**

For the reasons set forth above, the motion to dismiss is hereby denied. On or before April 29, 2021, The Trustee shall file an amended complaint to properly name the Defendant, whereupon the Court shall issue a summons for service. The Defendant shall file its answer within the time specified in the summons.

Date:  April 15, 2021                                    _____
                                                                         Frank J. Bailey
                                                                         United States Bankruptcy Judge

---

that the transferred property was property of the debtor, is a germane issue but not one of standing.